**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE (ABINGDON) DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **CHAPTER 7** |
| **AIMEE DAWN FUTREAL,** | ) | |
|     Debtor. | ) | **CASE NO. 15-70886** |

_____

| | | |
|---|---|---|
| **JUDY A. ROBBINS, UNITED** | ) | |
| **STATES TRUSTEE FOR REGION** | ) | **MOTION FOR REVIEW** |
| **FOUR,** | ) | **OF ATTORNEY'S FEES** |
|     **Movant,** | ) | **(Docket No. 9)** |
| | ) | |
| **v.** | ) | **ORDER TO APPEAR** |
| | ) | **AND SHOW CAUSE** |
| **BRENT BARBOUR and** | ) | **(Docket No. 20)** |
| **BARRY PROCTOR and** | ) | |
| **PRINCE LAW FIRM, LLC,** | ) | |
|     **Respondents.** | ) | |

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **CHAPTER 7** |
| **MICAH JERIMEY REPASS and** | ) | |
| **HOLLY LEIGH REPASS,** | ) | **CASE NO. 15-70885** |
|     Debtors. | ) | |

_____

| | | |
|---|---|---|
| **JUDY A. ROBBINS, UNITED** | ) | |
| **STATES TRUSTEE FOR REGION** | ) | **MOTION FOR REVIEW** |
| **FOUR,** | ) | **OF ATTORNEY'S FEES** |
|     **Movant,** | ) | **(Docket No. 17)** |
| | ) | |
| **v.** | ) | **ORDER TO APPEAR** |
| | ) | **AND SHOW CAUSE** |
| **BRENT BARBOUR and** | ) | **(Docket No. 33)** |
| **BARRY PROCTOR and** | ) | |
| **PRINCE LAW, LLC and** | ) | |
| **PRINCE LAW FIRM, LLC,** | ) | |
|     **Respondents.** | ) | |

**<u>MEMORANDUM OPINION</u>**

This matter came before the Court on a show cause hearing held on April 22, 2016 (the

"Show Cause Hearing"), following entry of the Court's Order to Show Cause for Sanctions

Against Prince Law, LLC; Brent Barbour, Esq.; Jason Edward Searns, Esq.; and Barry Proctor, Esq. (the "Show Cause Order"), in each of the above-styled cases.   The February 26, 2016 Show Cause Order issued from an evidentiary hearing on the U.S. Trustee's Motion for Review of Attorney's Fees (the "UST Motions") in each case, which were heard on February 17, 2016.

Previously, hearings on the UST Motions were noticed to the following Respondents for October 21, 2015:   Prince Law Firm, LLC, a Florida limited liability company; Prince Law, LLC, a District of Columbia limited liability company;[1] Brent Barbour, Esq., a Virginia licensed attorney ("Mr. Barbour"); and Barry Proctor, Esq., a Virginia licensed attorney ("Mr. Proctor"). The hearings were continued to February 17, 2016.[2]   Other than Mr. Proctor, no respondent appeared at the hearing on the UST Motions, and no written responses were filed by any respondent.   Mr. Proctor stipulated to the exhibits and facts set forth in the UST Motion on the Futreal matter.   Evidence was presented on the Repass matter, and both Micah and Holly Repass, Debtors in Case No. 15-70885, were sworn and examined.

Additionally, only Mr. Proctor and counsel for the U.S. Trustee appeared at the Show Cause Hearing on April 22, 2016, despite service being effectuated by the U.S. Marshals Service on Mr. Barbour; David Prince, Registered Agent, Prince Law, LLC; and Jason Edward Searns, Esq., Prince Law, LLC, in addition to Mr. Proctor.   *See Futreal*, Docket No. 23; *Repass*, Docket No. 36.   Mr. Proctor and the U.S. Trustee were the only parties who filed responses to the Show

---

[1] Given the seemingly interchangeable references to the Prince Law Firm, LLC and Prince Law, LLC in this matter, the Court will treat them as one in the same for present purposes.   Hereafter, unless otherwise specified, they will be referred to as "Prince Law."
[2] Consent orders were presented to the Court continuing the hearings on the motions from October 21, 2015 to December 16, 2015, and then to February 17, 2016.   These orders were only endorsed by the U.S. Trustee and Barry L. Proctor.   The other respondents clearly had notice of the initial motion and hearing, to which they filed no responses and no one entered an appearance on their behalf.

Cause Order.[3]

The Show Cause Order required the following:

(i)     that Mr. Barbour, Mr. Searns, and Prince Law appear and show cause why they should not be sanctioned for the following: (i) filing a petition and schedules in Repass Case No. 15-70307 without proper verification or authorization; (ii) filing a petition and schedules without personally meeting with Mr. and Mrs. Repass to verify their accuracy, (iii) filing an inaccurate and misleading Rule 2016 disclosure in the first Repass case, and (4) misrepresentations to the Court and to Mr. and Mrs. Repass about the status and conduct of their cases.   Mr. Searns and Prince Law shall also appear and show cause as to why they should not be held accountable for all actions taken by Mr. Barbour in connection his misrepresentations to Mr. and Mrs. Repass;

(ii)    that Mr. Searns and Prince Law shall also be expected to explain to the Court the scope and nature of their representation of clients in this Court, as well as the scope and nature of their legal assistants' activities in connection with the cases before this Court, and to show cause why they should not be sanctioned for permitting legal assistants or other unlicensed individuals to practice law in connection with cases before this Court;

(iii)   that Mr. Proctor, Mr. Searns and Prince Law shall appear and show cause why they should not be sanctioned for filing an inaccurate and misleading Rule 2016 disclosure in both the Repass and Futrell cases.   Mr. Proctor, Mr. Barbour, and Prince Law shall also appear and show cause why they should not be required to disgorge attorney's fees charged by them to Mr. and Mrs. Repass and Ms. Futreal;[4]

(iv)    that the hearing on the foregoing matters shall be held on April 22, 2016 at 2:00 p.m. in the United States Courthouse, 180 E. Main Street, Abingdon, VA 24210; and

(v)     that Mr. Barbour, Mr. Searns, Mr. Proctor and Prince Law shall each file a detailed response, in writing, to the Court's findings herein and file those responses with the Court no later than March 25, 2016, with a copy served on B. Webb King, Esq., in

---

[3] On April 22, 2016, at 12:49 p.m., Mr. Barbour called the United Stated District Court in Abingdon, Virginia and left a message that he would not be appearing in Court due to medical issues.   The hearing was at 2:00 p.m. in the District Court's courtroom in Abingdon.   On April 25, 2016, Mr. Barbour contacted the Clerk's office of this Court, inquiring if the hearing on the Show Cause Order went forward on April 22, 2016 and if so, the result of that hearing.   Mr. Barbour has yet to explain why he failed to reply to the Show Cause Order by the deadline set forth therein as directed.

[4] At the February 17, 2016 trial, the U.S. Trustee asked that the Court examine the parties' conduct in this case under certain of the Virginia Rules of Professional Responsibility.   The Commonwealth of Virginia has an administrative body charged with regulating the ethical and professional conduct of attorneys and many of the matters here may be more appropriately addressed in that forum.   See e.g., *In re Johnson*, 411 B.R. 296, 303 (Bankr. E.D. La. 2008).   The Court reserved the right to forward its ruling to appropriate disciplinary authorities, if appropriate, wherever located pending the outcome of the Show Cause Hearing.

the Office of the United States Trustee.

Additionally, the Show Cause Order requested that the U.S. Marshal effect service of the Order on

Brent Barbour, Esquire, The Barbour Law Firm, 4715 Boonsboro Road, Lynchburg, VA 24503;

Jason Edward Searns, Esq., Prince Law, LLC, 7800 Peters Road, Suite C-200, Plantation, FL

33324; Barry Proctor, Esq., 117 W. Main Street, Abingdon, VA 24210, and David Prince,

Registered Agent, Prince Law, LLC, 7800 Peters Road, Suite C-200, Plantation, FL 33324, or

wherever they may be found, and to provide evidence of return of service to the Clerk of this

Court.   Proof of service by the U.S. Marshal was entered by the Court on March 25, 2016 in both

cases.

## **FINDINGS OF FACT**

I.      The Futreal Case

Mr. Proctor filed Ms. Futreal's case on June 26, 2015.   The various required schedules and

statements were filed with the voluntary petition.   The creditors' meeting was held on July 30,

2015.   Based on statements at the Section 341 meeting of creditors, Mr. Proctor met with Ms.

Futreal regarding her bankruptcy filing on May 15, 2015.

At the creditors' meeting Mr. Proctor could not produce an original signature of Ms.

Futreal on her Chapter 7 petition made prior to the filing of the Debtor's case.[5]   Ms. Futreal

testified at the meeting of creditors that the Debtor's address listed on her Petition was inaccurate

as of the time of her filing and the listed address was, in fact, the address of a property formerly

owned by the Debtor that was foreclosed on.   Additionally, Ms. Futreal testified that she had

previously owned real property in Hillsville, Virginia.   Ms. Futreal further testified that the

---

[5] Mr. Proctor's Response indicates that Ms. Futreal had signed a prior draft petition, but a different petition was filed
with the Court that contained Ms. Futreal's electronic signature instead of her wet signature.

Hillsville property was foreclosed upon by the lender prior to the date the bankruptcy was filed. Ms. Futreal's interest in the real property in Hillsville was listed on Schedule A.

In addition, Ms. Futreal testified at the meeting of creditors that she previously owned raw land in Ivanhoe, Virginia and that this property had been subject to a lien in favor of Carter Bank and Trust.   She further testified that the Ivanhoe property was foreclosed upon by Carter Bank in April 2015.   Ms. Futreal's interest in the land in Ivanhoe was listed on Schedule A as a life estate. Ms. Futreal testified at the meeting of creditors she had previously owned real property in Hampton, Virginia.   She further testified that the Hampton property was foreclosed upon by the lender in April 2015.   Ms. Futreal's interest in the real property in Hampton was also listed on Schedule A.

Ms. Futreal testified at the meeting of creditors that she had sold a 1978 Chevy truck for $1,200 to a third-party.   That transfer was not disclosed in Question 10 of her Statement of Financial Affairs ("SOFA").   Ms. Futreal also testified that the home maintenance expense listed on line 4c of Schedule J was for the house that she owned but vacated several months before she filed for bankruptcy.   As of the date of the UST Motion, Ms. Futreal had not amended her schedules and related documents.

The response to Question No. 9 in the SOFA discloses that within the year prior to filing, Ms. Futreal made the following payments related to debt counseling and bankruptcy:

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYER IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Access Counseling, Inc<br>633 W 5th Street<br>Suite 26001<br>Los Angeles, CA 90071 | 11/25/14 | $25.00 Credit Counseling Certificate |
| Barry Proctor, Esq.<br>Prince Law Firm, LLC<br>117 West Main St.<br>Abingdon, VA 24210 | 11/8/14<br>11/12/14<br>11/21/14<br>11/21/14 | $310.00<br>$335.00 Filing Fee<br>$1,240.00<br>$33.00 |

As disclosed in Question No. 9 in the SOFA, Ms. Futreal paid Prince Law Firm, LLC $1,583.00

plus a $335.00 filing fee.    In Mr. Proctor's Response to the Show Cause Order, he states that the

correct and complete response to Question No. 9 in the SOFA should have been as follows:

> My law office is located at 117 West Main Street, Abingdon, Virginia 24210. The
> address for Prince Law Firm, LLC is 7800 Peters Road, Suite C200, Plantation,
> Florida 33324. I am a Class B Partner of Prince Law, LLC pursuant to a Class B
> Agreement dated March 26, 2015. (See copy attached). The four payments
> identified as having been received in November 2014 were made to Prince Law,
> LLC, prior to my becoming involved with the case in April 2015. I anticipated
> receiving $375.00 from Prince. No payments were made to my office by Ms.
> Futreal. The $335.00 filing fee was paid to the court by a credit card owned and
> maintained by David Prince. A $310.00 payment and $l,240.00 payment are
> believed to have been payment of Prince's legal fees. The $33.00 payment is
> believed to have been collected by Prince to obtain a credit report for Ms. Futreal.
> My office received payment from Prince Law Firm, LLC for legal services to Ms.
> Futreal in the amount of $175.00 on August 20, 2015.

Proctor's Response ¶ 13.   Mr. Proctor attached the Class B Membership Agreement to his

Response to the Show Cause Order.   The Class B Agreement was entered into on March 26, 2015,

by and between Prince Law LLC, a District of Columbia limited liability company and Mr.

Proctor.   Pursuant to the Class B Agreement, Prince Law LLC issued one "Class B Unit" of the

"issued and outstanding Units" of Prince Law LLC to Mr. Proctor as "Partner" as well as certain

payments identified on Schedule A of the Agreement in exchange for itemized services to be

performed by Mr. Proctor as listed in Section 1 of the Agreement.

The Disclosure of Compensation of Attorney for Debtor states that Mr. Proctor of the

Prince Law Firm, LLC was paid $1,550.00.   The disclosure also indicates that Mr. Proctor has

"not agreed to share the above-disclosed compensation with any other person unless they are

members and associates of [his] law firm."   In his Response to the Show Cause Order, Mr. Proctor

states that the disclosure "should have more completely identified that the legal fees were paid to

Prince directly and not to my office."

6

Ms. Futreal testified at her meeting of creditors that she hired Prince Law to represent her regarding a bankruptcy filing in 2014.   She further testified that Prince Law "sent her to another attorney [Brent Barbour] who did not work on her case."   It is unclear what, if any, legal services Mr. Barbour provided for the Debtor.   After complaints from Ms. Futreal, Prince Law assigned her case to Mr. Proctor.

Question No. 9 in the SOFA discloses that Mr. Proctor received payments from Ms. Futreal in November 2014.   However, Mr. Proctor did not meet with the Debtor until May 15, 2015 and only became involved after Prince Law had "sent" the Debtor to another lawyer unaffiliated with Mr. Proctor.   Mr. Proctor's Response to the Show Cause Order states that the response to Question 9 in the SOFA "should have more completely identified my office and Prince Law, LLC as having separate locations," that Mr. Proctor did not receive any payments directly from Ms. Futreal, and that he received one payment from Prince Law on August 20, 2015.   Mr. Proctor also stated that his communication with the Debtor began prior to May 15, 2015.

Ms. Futreal testified at the meeting of creditors that Prince Law had made "some big mistakes" regarding her bankruptcy documents, including listing creditors to whom she did not owe money and that these mistakes were part of the reason for the delay in her filing for bankruptcy.   These mistakes were also part of the reason for the delay between the meeting with Mr. Proctor on May 15, 2015 and the filing of the petition on June 26, 2015.   In his Response to the Show Cause Order, Mr. Proctor stated that he had conversations with Ms. Futreal on May 13, 2015, and prior to and after that date, indicating that revisions to the bankruptcy petitions originally prepared by Prince Law needed to be made.

The division of the fee between Prince Law, Mr. Proctor and Mr. Barbour was not explained in any filed disclosure.   A total fee of $1,583.00, however shared or divided, is excessive given the apparent lack of complexity associated with the Debtor's case and the numerous errors and omissions on the Debtor's Schedules and other documents filed in connection with the Petition.

Ms. Futreal's discharge order was entered on September 29, 2015.

II.      The Repass Case

Prior to filing this case, Mr. and Mrs. Repass filed another Chapter 7 case in this Court. That case was filed on March 14, 2015 and was assigned Case Number 15-70307.   In that case Mr. and Mrs. Repass were represented by Brent Barbour and Prince Law.

Mrs. Repass testified at the February 17, 2016 hearing that in April 2014 she was in financial distress, and she began researching on the internet how to file bankruptcy.   She testified that she discovered Prince Law on the internet, and she was interested in them because they would accept payment of their fee in installments.   After speaking with a Prince Law representative, she understood they were a national law firm with offices throughout the United States.   Mrs. Repass testified that Prince Law assisted her in choosing the exemptions for her case.   At the outset, she is not aware that she actually ever spoke to or communicated with an attorney at Prince Law, just paralegals or staff.   She received e-mails from "Prince Law, LLC," "The Client Service Team" at Prince Law, "Patty Ryan, Senior Paralegal" at Prince Law, "Diana Soto, Supervising Paralegal" at Prince Law, and "Yanet Garcia, Paralegal" at Prince Law.   U.S. Trustee Ex. 10-13, 15.   On May 7, 2014, she received an email from cs@princelawfirm.com advising that "Our law firm represents

8

you in a bankruptcy matter and . . . your matter is now being handled by Prince Law, LLC." U.S. Trustee Ex. 10.

On August 26, 2014, Mrs. Repass was informed by "The Client Service Team" that "Your file is with our Senior Paralegal and your Petition and Schedules is [sic] being prepared for filing." U.S. Trustee Ex. 11. At this point, Mrs. Repass had yet to speak to an attorney. However, the August 26, 2014 email provides that "[f]ollowing the preparation, you will be hearing from your attorney to discuss the case and review your Petition prior to filing the bankruptcy." *Id*.

On October 28, 2014, Mrs. Repass received an e-mail from Patty Ryan, Senior Paralegal, that "I have made the revisions to your file and I have forwarded it to the attorney who will be representing you, Brent Barbour. Please contact his office and make arrangements to review this file." U.S. Trustee Ex. 12. This was the first time the evidence reflects that Mrs. Repass learned the name of the attorney who would be representing her.

On December 1, 2014, Mrs. Repass emailed Diana Soto, Senior Paralegal, advising her that "I am emailing you because I have yet to hear anything back from anyone at Prince Law or from the attorney that has taken my bankruptcy case." Mrs. Repass further complained that she was upset with the way her case was being handled, that she made her final payment in June 2014, and that she had called Prince Law on November 21, 2014. In that call, she was advised that someone would call her back on Monday, November 24, 2014, but no one did. Apparently after no response to this email, Mrs. Repass emailed Paralegal Soto again on December 3, 2014, asking for an update, complaining that "[t]his will be my second email along with the two phone calls I have made to you this week. When I have called I have been told that you are busy and will get back with me, but I have not had any phone calls." U.S. Trustee Ex. 13.

9

Sometime between December 1, 2014 and March 23, 2015, Mrs. Repass made contact with Brent Barbour, an attorney in Lynchburg, Virginia.   Mr. Barbour asked for some additional information on March 23, 2015, including a copy of the credit counseling certificate and their tax returns.   Mrs. Repass lives in Tazewell, Virginia, and the Court is aware that Lynchburg is approximately a three-hour drive from Tazewell.   Neither Mr. nor Mrs. Repass have ever met or seen Mr. Barbour in person.

On March 14, 2015, Mr. Barbour filed their Chapter 7 Petition and schedules, and the initial meeting of creditors was scheduled for April 9, 2015.   A deficiency notice was sent to Mr. and Mrs. Repass on March 16, 2015 advising them that no credit counseling certificate was filed with the Petition confirming they had taken the requisite course within 180 days of filing.     It is that deficiency notice that appears to have prompted Mr. Barbour to ask for the certificate by email on March 23, 2015.

On March 31, 2015, Mr. Barbour filed credit counseling certificates on behalf of Mr. and Mrs. Repass, but they were dated March 27, 2015.   The case was dismissed by Order entered April 1, 2015 because the certificates were not dated within the 180 days prior to filing.   See 11 U.S.C. §109(h); Case No. 15-70307, Docket No. 13.   Despite the case being dismissed, Mrs. Repass testified that Mr. Barbour told her the meeting of creditors was continued from April 9, 2015 until a date in May 2015.   In the meantime, Mr. Barbour wrote the Court a letter dated April 4, 2015, asking the Court to reconsider its dismissal order.   The letter included the following statements:   the debtors "came to Prince Law Firm, a national law firm, seeking to file bankruptcy," and "[f]or reasons unknown to me, it took an inordinate amount of time for me to

10

receive their documents."   Case No. 15-70307; Docket No. 15.   Mr. Barbour also stated as

follows in the letter:

> Although I should have asked this Court for an extension to file these documents, I did not do so based on assurances I would have the documents in time to file them accordingly. Apologetically, I ask for lenience and for reconsideration on behalf of my clients. At this juncture, my clients have complied with all other requests from the Court; to suffer further penalty would be unduly harsh as these debtors do not have the finances to pay additional filing fees or lose the protection of the automatic stay.
>
> I also ask this Court for reconsideration of this petition based on my own deficiency and mistake in filing these and other documents associated with this case. Although all other mistakes were timely corrected, my performance in filing these cases has not been as efficient as I would have preferred.
>
> I respectfully ask this Honorable Court for reconsideration to reopen, without penalty and to do so without further hearing.

*Id*.   Mr. and Mrs. Repass are not shown as copied on the letter.

The Court treated the letter as a motion for reconsideration, and set the matter for hearing

on May 21, 2015 in Abingdon, Virginia.   At some point thereafter, Mr. Barbour informed Mr. and

Mrs. Repass that they would need to be in Abingdon for what they believed to be their initial

meeting of creditors.   They were not told by Mr. Barbour that there was a hearing on his request to

reinstate their case.   Mr. Repass arranged to take off from work that day, and his employer hired a

substitute for him.

At some undetermined point, Mrs. Repass obtained the phone number and subsequent

email address of Jason Edward Searns, Esq., whose e-mail reflects he is "Managing Partner, Prince

Law, LLC."[6]   U.S. Trustee Ex. 19.   Mrs. Repass called and left a voice mail with Mr. Searns on

---

[6] Efforts to obtain a service address for Mr. Searns for the Show Cause Order produced curious results.   The address of Prince Law, LLC is listed as 7800 Peters Road, Suite C-200, Plantation, FL 33324.   *Repass*, U.S. Trustee Ex. 12. A Jason Edward Searns is listed on the Colorado Supreme Court website as a Colorado licensed attorney, with an address of Prince Law, LLC at the same Plantation, FL location.   However, the Florida State Bar has no Jason Edward

11

May 14, 2015, apparently raising issues with Mr. Barbour and the handling of her case.   Mr.

Searns in turn emailed Mrs. Repass and advised as follows:

> I got your voice mail today and spoke with attorney Brent Barbour. He said the
> court hearing is next week and that he had communicated with you about that.
> Can you send me a copy of the recent email you received from Brent that you
> discussed with my staff yesterday, so I can follow up with Brent.   The key here is
> the bankruptcy was filed, but you must attend the one hearing to finalize the
> bankruptcy and get your discharge.

U.S. Trustee Ex. 19.   This is the first identification of the active involvement of a Prince Law

attorney in the case.   This e-mail can be read as consistent with Mrs. Repass's belief that she was

being asked to attend a creditors' meeting, not a motion to reinstate her case.[7]

    Mrs. Repass emailed Mr. Barbour and copied Mr. Searns twice on May 14, 2015 and again

on May 19, 2015, asking for Mr. Barbour to call her because she had questions.   U.S. Trustee Ex.

17, 18.   On May 19, 2015, Mrs. Repass states "[a]s per our phone conversation last week on

05/13/15, I have not received the information email you were suppose [sic] to send to me."   U.S.

Trustee Ex. 17.   Mrs. Repass also asked the court location and when she was supposed to be there,

which information Mr. Barbour then provided.   *Id.*

    At 4:51 a.m. on May 21, 2015, Mr. Barbour e-mailed Mrs. Repass and advised he was not

feeling well and would have to reschedule their court date.   Mrs. Repass advised Mr. Barbour her

---

Searns listed as licensed in Florida on their website.   The Affidavit of the Custodian of Records at the Virginia State
Bar provides that a diligent search produces no record that Jason Edward Searns is, or ever has been, licensed in
Virginia.   *Repass*, U.S. Trustee Ex. 25.

[7] Exhibit 19 is a lengthy email from Mrs. Repass to Mr. Searns outlining the issues she has had with Mr. Barbour and
Prince Law as a whole, including delays in handling her case, turnover in Prince Law personnel, the delivery of
inaccurate information to Mrs. Repass, wasted time and expense for days taken off from work, and duplicate fees
having to have been paid for credit counseling.   At one point in the e-mail, Mrs. Repass states "[t]hen after having to
call and talk with him [Mr. Barbour] again I get a court date for 04/09/14 [sic] which has to be rescheduled due to
conflict with his schedule."   As the docket reflects, the April 9, 2015 "court date" was actually the date of the initial
meeting of creditors, which did not take place because the case was dismissed—not because of a conflict Mr. Barbour
had on his schedule.

12

husband had already scheduled a day off and since he was a school employee, he could not arrange

any more court dates until after school was out on June 12, 2015.   U.S. Trustee Ex. 18.

No one appeared at the hearing in Abingdon on May 21, 2015, and the motion for

reconsideration was denied.   Mr. Barbour did not alert the Court to any illness in advance of the

hearing, although he did claim illness when called by the Clerk's office afterwards to ascertain his

whereabouts.   The Court issued a show cause order against Mr. Barbour, and set it for hearing on

June 8, 2015.

Mr. Barbour appeared at the show cause hearing on June 8, 2015, and the Court ordered

Mr. Barbour to retake Electronic Case Filing training with the Court, and also certify that he read

the local rules of practice of this Court, all within three months.   Mr. Barbour failed to do either of

those things, and his filing privileges in this Court were revoked.   Pursuant to that Order, Mr.

Barbour could apply for reinstatement of such privileges after one year.   Notably, however, the

Court was not aware at that time of the allegations against Mr. Barbour made by the U.S. Trustee

in the current motion.

Also on June 8, 2015, Mr. Barbour informed Mrs. Repass that that he would contact her

"later today" to give her a new court date.   This appears to be the last communication Mrs. Repass

had with Mr. Barbour.   There is no evidence he told her the case was dismissed or that he was

under a show cause order in connection with her case.

Mr. Searns told Mrs. Repass on June 8, 2015 that Mr. Barbour "properly notified the court

when he was ill, but they did not enter it into their system which caused the problem."   U.S.

Trustee Ex. 21.   No such notice was provided to the Court until the Court inquired of Mr.

Barbour's absence.   On June 9, 2015, Mrs. Repass had a conversation with Mr. Searns, either

13

learning from him or confirming after hearing from another source that her case was dismissed.
Also on that date, Mr. Searns advised Mrs. Repass of a new attorney handling her case, Barry
Proctor in Abingdon, Virginia.

Based on statements at the meeting of creditors, Mr. Proctor and Mr. and Mrs. Repass
reviewed their petition, schedules, and related documents regarding their bankruptcy filing on
June 17, 2015 over the telephone.   Mr. Repass testified at the meeting of creditors that he missed
two days of work without pay related to matters in Case No. 15-70307.   Mr. and Mrs. Repass
testified at the section 341 meeting of creditors in this case that they did not see or sign the petition,
schedules or related documents filed by Mr. Barbour prior to the filing of Case No. 15-70307.

The response to Question No. 9 in the SOFA in Case No. 15-70307 discloses that within
the year prior to filing, Mr. and Mrs. Repass made the following payments related to debt
counseling and bankruptcy:

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYER IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Access Counseling Inc<br>633 W 5th St, Suite 26001<br>Los Angeles, CA 90071 | 07/17/2014 | $50.00 Credit Couseling Course Fee |
| Brent Barbour, Esq.<br>Prince Law, LLC<br>4715 Boonsboro Road<br>Suite 96<br>Lynchburg, VA 24503 | 06/19/2014 | $1,500.00 retainer fee<br>$335.00 filing fee |

In addition, the response to Question No. 9 in the SOFA in this case discloses that within the year
prior to filing, Mr. and Mrs. Repass made the following payments related to debt counseling and
bankruptcy:

14

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT. NAME OF PAYER IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Access Counseling Inc<br>633 W 5th St, Suite 26001<br>Los Angeles, CA 90071 | 07/17/2014 | $50.00 Credit Couseling Course Fee |
| Barry L. Proctor, Esq.<br>Prince Law, LLC<br>117 West Main St.<br>Abingdon, VA 24210 | 06/19/2014 | $1,500.00 retainer fee<br>$335.00 filing fee |

The response to Question No. 9 in the SOFA in Case No. 15-70307 and in this case are identical other than replacing Mr. Barbour's name and address with Mr. Proctor's name and address. Moreover, the response to Question No. 9 in the SOFA filed in this case does not mention Mr. Barbour.   As disclosed in response to Question No. 9 in the SOFA, the Debtors paid either Mr. Barbour or Mr. Proctor of Prince Law $1,500.00 plus the $335.00 filing fee.   In his Response to the Show Cause Order, Mr. Proctor states the following:

> The response [to Question No. 9 in the SOFA in the instant case] is not complete in that it does not make the distinction between the Office of Barry L. Proctor and Prince Law, LLC, and provide the Florida address for Prince Law Firm, LLC.   It does not make it clear that the $1,500.00 retainer and $335.00 filing fee paid on June 19, 2014 was paid to Prince Law, LLC prior to my involvement in the case. According to the testimony of Mr. and Mrs. Repass, one retainer fee of $1,500.00 and one filing fee of $335.00 were paid in total for both petitions filed on their behalf.
> . . . .
> The response to Question No. 9 does not correctly state that the $1,500.00 was paid to Prince Law, LLC in Case No. 15-70307, and the law office of Mr. Proctor is a separate location from that of Prince Law, LLC.

Proctor's Response ¶¶ 47, 50.   As in the Futreal case, Mr. Proctor contends he is a Class B Partner of Prince Law, LLC pursuant to the Class B Agreement.   Prince Law, LLC is a District of Columbia limited liability company pursuant to the Class B Agreement.   Mr. Proctor describes himself as a solo practitioner with a physical office address of 117 West Main Street, Abingdon, Virginia 24210.   Prince Law does not otherwise occupy or have use of Mr. Proctor's office. There was no evidence that Prince Law has an office at 4715 Boonsboro Road, Suite 96,

Lynchburg, VA 24503, which is Mr. Barbour's listed office.   Prince Law Firm, LLC and Prince

Law, LLC are not authorized to do business in Virginia.[8]

Question No. 9 in the SOFA in this case discloses that Mr. Proctor received payments from

Mr. and Mrs. Repass in June 2014.   However, in his Response, Mr. Proctor states that he received

no money directly from Mr. or Mrs. Repass, and only received $175.00 from Prince Law on

August 20, 2015.

A total fee of $1,500.00, however shared or divided, is excessive given the apparent lack of

complexity associated with Mr. and Mrs. Repass's case, the delay in filing and the hardship

suffered by Mr. and Mrs. Repass due to the botched filing in Case No. 15-70307.

Mr. and Mrs. Repass's discharge order was entered on September 29, 2015.

The U.S. Trustee contends that the respondents violated 11 U.S.C. § 329(a), along with

Bankruptcy Rule 2016.   "Filing an inaccurate, incomplete, or false Rule 2016 Disclosure violates

both Bankruptcy Rule 2016 and § 329(a)."   Futreal Motion, at ¶ 21; Repass Motion, at ¶ 29.

At the Show Cause Hearing, Mrs. Repass appeared and testified that she was pleased with

Mr. Proctor's representation and that she had no complaints with him.   She testified that her issues

were primarily with Prince Law.   The Court notes that the U.S. Trustee's Office advised the Court

that Mr. Proctor was fully cooperative with their office in these matters.   The Court further notes

that Mr. Proctor timely filed a response to the Show Cause Order and participated in all hearings

before the Court on these matters as well.

---

[8] To add to the name confusion, Mrs. Repass was advised by e-mail dated May 7, 2014 that "this email provides notice that as a client of The Law Offices of Prince & Associates, LLC, your matter is now being handled by Prince Law, LLC."   U.S. Trustee Ex. 10.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia.   This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2).   "A federal court has an inherent power 'to control admission to its bar and to discipline attorneys who appear before it.'" *In re Parker,* No. 3:14cv241, 2014 WL 4809844, at *5, 2014 U.S. Dist. LEXIS 136355, at *14 (E.D. Va. Sept. 26, 2014) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991)).   This inherent power extends to bankruptcy courts and "includes the power to suspend or disbar attorneys from practicing before the court." *Williams v. Lynch (In re Lewis),* No. 14-1881, 2015 WL 3561277, at *2, 2015 U.S. App. LEXIS 9597, at *4 (4th Cir. Jun. 9, 2015) (citing *In re Snyder,* 472 U.S. 634, 643, 105 S. Ct. 2874 (1985)).   The Court imposes sanctions against Mr. Barbour, Mr. Searns, Prince Law, and Mr. Proctor pursuant to this inherent power and the authority granted to it under 11 U.S.C. § 105(a).   See *In re Paciocco*, MP No. 15-00302-KRH, 2015 WL 5178036, 2015 Bankr. LEXIS 2971 (Bankr. E.D. Va. Sept. 3, 2015).

In that regard, as this matter initially came before the Court on a motion to review attorney's fees, Section 329(a) of the Bankruptcy Code provides as follows:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a).

17

Further, Bankruptcy Rule 2016(b) entitled "Disclosure of Compensation Paid or Promised to Attorney for Debtor," states:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

Fed. R. Bankr. P. 2016(b).

In the Futreal case, the requisite disclosure filed by Mr. Proctor and Prince Law disclosed that "I am the attorney for the above-named debtor," and that "[f]or legal services, I have agreed to accept $1,550.00" and "[p]rior to the filing of this statement I have received $1,550.00."   U.S. Trustee Ex. 1, at p.37.   Further, the disclosure provides "I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm."   Mr. Proctor was paid only $175.00 as a Class B Partner of the $1,550.00 fee collected by Prince Law from Ms. Futreal.

Mr. Proctor testified that he was to be paid a fee of $375.00 for his services.   He understood that the petitions would be prepared by Prince Law and that he would appear at the meeting of creditors on their behalf.   Prince Law paid him $175.00 for his services in connection with Ms. Futreal.   The Petition and Schedules in the Futreal case were prepared entirely by Prince

Law, an out-of-state law firm with no listed member of the bar of this Court, with minimal, if any, input from Mr. Proctor.[9]

In the first Repass case, Case No. 15-70307, the requisite disclosure filed by Brent Barbour, Esq. and Prince Law disclosed that "I am the attorney for the above-named debtor," and that "[f]or legal services, I have agreed to accept $1,500.00" and "[p]rior to the filing of this statement I have received $1,500.00."    U.S. Trustee Ex. 1, at 44.    Further, the disclosure provides "I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm."    The relationship between Mr. Barbour and Prince Law remains unclear.    The Petition and Schedules in the first Repass case were prepared entirely by Prince Law, an out-of-state law firm, with minimal, if any, input from Mr. Barbour.

In the instant Repass case, Case No. 15-70885, the requisite disclosure filed by Mr. Proctor and Prince Law disclosed that "I am the attorney for the above-named debtor," and that "[f]or legal services, I have agreed to accept $1,500.00" and "[p]rior to the filing of this statement I have received $1,500.00."    U.S. Trustee Ex. 9, at p.44.    Further, the disclosure provides "I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm."    Mr. Proctor, contending he is a Class B Partner of Prince Law, has received only $175.00 of the total fees of $1,500.00 collected by Prince Law from the Repasses.    Mr. Proctor testified that he was to be paid a fee of $375.00 for his services.    He

---

[9] Mr. Proctor testified he initially agreed to just appear at the meeting of creditors as local counsel for Prince Law, and that Prince Law would file the petition.    However, upon review of the petition and schedules, he was not comfortable doing so, and he filed them as a member of the local bar.    The Court questions if this was truly the arrangement, as the Class B Agreement contemplates that Mr. Proctor would file petitions as a member of Prince Law.    Indeed, the Court is not aware of any Prince Law attorney with ECF privileges in this district (excluding the Class B Agreement relationship).    Mr. Proctor testified that any changes to the Petition and schedules he instructed would have been made by Prince Law, as they had the documents on their software.

understood that the petitions would be prepared by Prince Law and that he would appear at the meeting of creditors on their behalf.

Based on the evidence before the Court, the business model of Prince Law appears to be to advertise on the internet, and when contacted by a prospective client, wherever that prospect may be located, advise they are a "national law firm" and pitch the acceptance of receiving attorney's fees and filing fees in installments, which is attractive to those in financial distress and whose income is limited.   Once a client is obtained and the fees collected, the petition and schedules are prepared, apparently in Florida, for filing in the jurisdiction where the new client is located.   In this case it was Virginia.   Once the petition and schedules are prepared, the law firm solicits a local lawyer to file the case and attend the meeting of creditors for a fixed fee, a fraction of what has been paid to the law firm, under the guise of becoming a Class B member in the firm.[10]   The Class B Agreement appears to be the method the law firm attempts to invoke the exception in Bankruptcy Rule 2016(b) which provides that "but the details of any agreement for the sharing of the compensation with *a member* or regular associate of the attorney's law firm shall not be required."   Fed. R. Bankr. P. 2016(b) (emphasis added).

In these cases, the Court finds the Class B Agreements are sham transactions with no purpose other than to skirt the fee sharing disclosure obligations in both the Bankruptcy Code and Bankruptcy Rules.   Prince Law LLC is a District of Columbia limited liability company and it is not authorized to business in Virginia.   Virginia Code § 13.1-1113 provides that "[b]efore any professional limited liability company may engage in the practice of law in this Commonwealth, it shall first obtain and maintain a registration certificate required for that professional limited

---

[10]  Indeed, the Class B Agreement Mr. Proctor filed as an exhibit with the Court in both the Repass and Futreal cases appears to be a form document pre-signed by David L. Prince on October 6, 2014 and provided to Mr. Proctor by "Lynore Reisek, V.P./EAP Liaison, Prince Law, LLC."

liability company by Chapter 39 (§ 54.1-3900 et seq.) of Title 54.1."   In turn, Va. Code § 54.1-3902 requires that, before a foreign limited liability company can practice in Virginia, it must register with the Virginia State Bar and pay the requisite fees.   Moreover, Va. Code § 13.1-1105 requires a foreign professional limited liability company to register with the Virginia Corporation Commission and obtain a certificate of authority to practice on certain limited terms and conditions.[11]   There is no evidence any of this was done in either of the cases before the Court, nor is there any evidence that the Virginia State Bar is aware of an affiliation between either Mr. Barbour or Mr. Proctor and Prince Law.   Their addresses of record with the Virginia State Bar reflect no such affiliation, and when Mr. Proctor was asked by the Court on February 17, 2016 if Prince Law has an office at his address, he answered in the negative in no uncertain terms. Further, Mr. Searns, the "Managing Partner" of Prince Law who was actively involved in the Repass's case, is not admitted to the Virginia State Bar.   All of these matters taken together reflect that there was no purpose to the Class B Agreements other than to hide the ball on who was actually doing the work, where it was being done, and how the fees were shared, all in an attempt to fit within the disclosure exception set forth in Bankruptcy Rule 2016(b).

Additionally, Bankruptcy Rule 9011(b) provides as follows:

REPRESENTATIONS TO THE COURT. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

---

[11] To the extent that the limited liability company statutory scheme applies, as opposed to that of professional limited liability companies, there is no evidence of compliance with that statutory scheme either.  See Va. Code §§ 13.1-1051, 1052.

21

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b).

Bankruptcy Rule 1008 provides that "[a]ll petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746." Fed. R. Bankr. P. 1008. "The verification requirement under Bankruptcy Rule 1008 relates to Bankruptcy Rule 9011(b) because, by failing to obtain the debtor's verification as to the accuracy of the documents he files, an attorney falsely represents to the court that 'the allegations and other factual contentions have evidentiary support.'" *In re Bradley*, 495 B.R. 747, 779 (Bankr. S.D. Tex. 2013).

In the first Repass case, Case No. 15-70307, Mr. Barbour filed the case without the Debtors' review or prior verification of the facts. Indeed, the record reflects that Mr. and Mrs. Repass did not even know the petition was actually filed until after the fact. Further, the record also reflects that Prince Law facilitated this by preparing the petition and schedules out of state, largely if not exclusively with non-attorneys, and without going over the petition and schedules with the Debtors. The petition and schedules appear to have been prepared remotely and then sent to Mr. Barbour, who then filed them without verification or authorization. Moreover, case law supports a finding that "electronically filing a document that purports to have the debtor's signature but which was not in fact signed by the debtor is no different than physically forging the

22

debtor's signature on a paper document." *Id*. at 780.   Consequently, filing a document bearing

an electronic signature that was not actually or validly signed constitutes a forgery giving rise to a

Rule 9011 violation.   *Id*.

Both Mr. Barbour and Prince Law collectively filed the first Repass case without

verification or compliance with Bankruptcy Rule 9011(b).   Jason Searns, as the only Prince Law

attorney ever in contact with Mrs. Repass, is deemed the responsible attorney within that firm in

connection with its dealings with her.   Thus, based on the record to date, the actions of Prince Law

in connection with Mr. and Mrs. Repass will be imputed to him.

An attorney who violates Bankruptcy Rule 9011(b) may be sanctioned pursuant to

Bankruptcy Rule 9011(c).   Bankruptcy Rule 9011(c) provides, in part, as follows:

> (c) SANCTIONS. If, after notice and a reasonable opportunity to respond, the court
> determines that subdivision (b) has been violated, the court may, subject to the
> conditions stated below, impose an appropriate sanction upon the attorneys, law
> firms, or parties that have violated subdivision (b) or are responsible for the
> violation.
>
> (1) *How Initiated*. . . .
>
> (B) *On Court's Initiative*. On its own initiative, the court may enter an order
> describing the specific conduct that appears to violate subdivision (b) and directing
> an attorney, law firm, or party to show cause why it has not violated subdivision (b)
> with respect thereto.

The Court finds that Prince Law; Brent Barbour, Esq.; and Jason Edward Searns, Esq.

violated Bankruptcy Rule 9011(b) in connection with the first Repass case, Case No. 15-70307.

In addition, the Court finds that Mr. Barbour made misrepresentations to his clients in

connection with the status of the first Repass case, including not telling them the case was filed and

concealing their case was dismissed by the Court.   He also misled them by leading them to believe

they were to attend a rescheduled meeting of creditors, when in fact the hearing they were being

asked to attend was on a motion to reinstate a dismissed case.   Mr. Proctor, who by all accounts

has done a commendable job for his clients and who has fully cooperated with the U.S. Trustee and

the Court in this matter, has primarily transgressed the duty of disclosure as required by

Bankruptcy Rule 2016(b).

This leaves the matter of appropriate sanctions.   Mr. Barbour misled his clients, failed to

respond to the show cause order, and failed to appear in Court to explain his actions.   Mr.

Barbour's privileges to practice before this Court shall be revoked, and Mr. Barbour shall be fined

$2,500.00, to be paid within sixty (60) days of the Court's order to do so.   After three (3) years

Mr. Barbour may apply for readmission to the bar of this Court, provided he timely pays the

$2,500.00 fine set forth above. There is no evidence any of the funds paid to Prince Law actually

made their way to Mr. Barbour, so no disgorgement of fees will be ordered from him.

Jason Edward Searns and Prince Law, LLC, a District of Columbia limited liability

company, are collectively fined $2,500.00 for the unauthorized practice before this Court.   The

Court finds that their solicitation of and control over the Futreal and Repass cases in this

jurisdiction, and their use of non-licensed legal personnel to prepare documents filed in this case,

amounts to the unauthorized practice of law before this Court.   Further, the Class B Agreements

are found to be insufficient to satisfy the disclosure exception to Bankruptcy Rule 2016(b),

particularly in light of Mr. Searns's and Prince Law's failure to meet any of the Commonwealth of

Virginia's statutory requirements to practice law in this jurisdiction.   Mr. Searns and Prince Law

are further ordered to disgorge all attorneys' fees paid by the Futreals and the Repasses in this

matter, less any fees paid to Mr. Proctor.   All fines and fees to be disgorged shall be paid within

sixty (60) days of the Court's order to do so.   Mr. Searns and Prince Law are further prohibited

from filing or participating in, either directly or indirectly, any cases in the United States

Bankruptcy Court for the Western District of Virginia now or in the future.

Mr. Proctor is directed to disgorge the sum of $175.00 to Ms. Futreal and $175.00 to the

Repasses for failing to make a proper Bankruptcy Rule 2016(b) disclosure in their cases.   Such

payment shall be made within sixty (60) days of the date of the Court's order to do so.   The Court

finds Mr. Proctor to have been forthright and credible in his appearances before the Court,

including his testimony under oath.   No further restrictions or sanctions will be placed upon Mr.

Proctor given his cooperation in these cases and that the services he provided proved valuable to

his clients.[12]

The Clerk is directed to send a copy of this Memorandum Opinion to the Debtor(s); the

Chapter 7 Trustee; the United States Trustee; Brent Barbour, Esquire, The Barbour Law Firm,

4715 Boonsboro Road, Lynchburg, VA 24503; Jason Edward Searns, Esquire, Prince Law, LLC,

7800 Peters Road, Suite C-200, Plantation, FL 33324; Barry Proctor, Esquire, 117 W. Main Street,

Abingdon, VA 24210; and David Prince, Registered Agent, Prince Law, LLC, 7800 Peters Road,

Suite C-200, Plantation, FL 33324.

---

[12]  The Court's sanctions are made under its inherent authority to discipline attorneys who appear before it.
However, the Court is aware there is an alternate ground for sanctions available to the Court, even though not pursued
by the U.S. Trustee.   Section 526(c)(2)(C) of the Bankruptcy Code provides that "Any debt relief agency shall be
liable to an assisted person in the amount of any fees or charges in connection with providing bankruptcy assistance to
such person that such debt relief agency has received, for actual damages, and for reasonable attorneys' fees and costs
if such agency is found, after notice and a hearing, to have . . . (C) intentionally or negligently disregarded the material
requirements of this title or the Federal Rules of Bankruptcy Procedure applicable to such agency."   11 U.S.C. §
526(c)(2)(C).   Further, Section 526(c)(5) provides that "[n]otwithstanding any other provision of Federal law and in
addition to any other remedy provided under Federal or State law, if the court, on its own motion or on the motion of
the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and
consistent pattern or practice of violating this section, the court may–(A) enjoin the violation of such section; or (B)
impose an appropriate civil penalty against such person."   11 U.S.C. § 526(c)(5).

A separate Order shall issue.

Decided this 5th day of May, 2016.

_____
UNITED STATES BANKRUPTCY JUDGE